Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER (PETRA) GARDELLA,<br><br>                                  Plaintiff,<br><br>        v.<br><br>MANHATTANVILLE COLLEGE,<br><br>                                  Defendant. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, as follows.

## NATURE OF THE CASE

1.  Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq. and the New York State Human Rights Law, N.Y. Executive Law Executive Law § 290 et seq.  Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's sex/gender and/or gender identity.  Defendant Manhattanville College also retaliated against Plaintiff because Plaintiff engaged in the protected activity of complaining about the discriminatory treatment.

1

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3).

3. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), as it is a judicial district in the State (New York) in which the unlawful employment practices are alleged to have been committed.

4. The Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

## PROCEDURAL PREREQUISITES

5. Plaintiff received a Notice of Right to Sue ("Notice") from the Equal Employment Opportunity Commission with respect to these charges of discrimination.

6. This Action is being commenced within ninety (90) days of receipt of the Notice.

## PARTIES

7. At all times material, Defendant Manhattanville College was an institution of higher learning with a place of business located at 2900 Purchase Street in Purchase, New York 10577.

8. At all times material, Defendant Manhattanville College was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

9. At all times material, Defendant Manhattanville College had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

10. At all times material, Defendant Manhattanville College was Plaintiff's employer under Title VII and the New York Human Rights Law.

MATERIAL FACTS

11. Plaintiff began working for Defendant Manhattanville College in 1983 as a Professor.

12. Although Plaintiff was born biologically male, Plaintiff identifies as trans and goes by Petra rather than Peter.

13. On or about April 24, 2019, after taking Hormone Replacement Therapy since the preceding August, Plaintiff came out as trans during a discussion of current issues in the class on Sexuality and Religion that he had taught regularly since 1984.

14. Plaintiff came out as trans for the first time at this time for two essential reasons, including (i) to be honest with Plaintiff's students in a class that specifically addressed issues of modern gay and trans liberation and (ii) Plaintiff was repeatedly being asked Plaintiff's pronouns.

15. On or about May 2, 2019, HR Director Seann Kalagher sent an email to Plaintiff asking Plaintiff for a meeting to discuss a rumor, called to Kalagher's attention by an anonymous staff or faculty member who overheard students talking about the class in a hallway.

16. Plaintiff immediately thereafter sent sent a copy of the syllabus of the course Sexuality and Religion to Kalagher and to Provost Feroe and President Geisler, and made an appointment to meet with President Geisler.

17. Plaintiff sent the syllabus to the administration in order to give notice that his syllabus contained a trigger warning and that the syllabus advised the students that the class would include explicit discussions of sex and sexuality.

18. The meeting between Plaintiff and Kalagher was never held.

19. Plaintiff met with President Geisler approximately three weeks later.

20. During the meeting with President Geisler, Plaintiff came out to President Geisler as trans, disclosed that Plaintiff was on hormone therapy as part of Plaintiff's transition, and asked Geisler whether he might teach as "Petra" while remaining legally "Peter."

21. Geisler responded that it would be "alright" with him "as long as he was President."

22. On or about October 30, 2019, Plaintiff was invited with all other faculty and staff to a training session about how to most sensitively handle situations where people came out.

23. In considering whether to come out as trans at that meeting, Plaintiff made an appointment and met with Samantha Bieleski, one of the Student Affairs administrators running the meeting.

24. Plaintiff in fact met with Bieleski just prior to the training session, disclosed that Plaintiff was trans and was transitioning, and described the effects of Hormone Replacement Therapy.

25. After approximately ten minutes, Bieleski responded that she was becoming "very uncomfortable with the conversation." Plaintiff stopped the discussion, left the office, and did not come out at the training session.

26. As part of the training session that occurred that afternoon, attendees created a comprehensive list of every negative word they could associate with LGBTQ individuals. These words were then written on Post-Its, stuck to a wall, and read aloud.

27. This created an intensely hostile work environment for Plaintiff and as a trans person dealing with the emotional impact of deciding whether and how to come out to Plaintiff's colleagues, this exercise was insensitive and emotionally damaging.

28. On November 13, having heard that another session of this training was scheduled for November 20, Plaintiff wrote a letter sharing Plaintiff's feelings and experience about the training to President Geisler and Provost Feroe among other administrators involved in preparing and facilitating these sessions. Plaintiff asked whether they should attend on November 20.

29. On November 19, Provost Feroe answered that Plaintiff should not attend the scheduled November 20 session. She also disagreed with Plaintiff regarding Title IX issues and academic freedom. Plaintiff and Provost Feroe agreed to meet on December 3 to discuss.

30. On November 20, the second training session was canceled upon information and belief as a result of Plaintiff's communications.

31. On or about December 3, 2019, Plaintiff met separately with then Provost Louise Feroe and Dean Christine Dehne and came out to each of them as trans.

32. On or about December 3, 2019, Provost Feroe told Plaintiff that students could file a Title IX complaint against Plaintiff if Plaintiff taught class while wearing a dress.

33. Plaintiff was stunned and emotionally distressed at this comment.

34. Plaintiff wanted to come out as trans more publicly, but Provost Feroe's conduct made Plaintiff fear doing so.

35. Defendant Manhattanville College's future responses to Plaintiff coming out corroborated Plaintiff's concerns.

36. On or about June 19, 2020, Plaintiff came out to the faculty members of Plaintiff's Division, the Division of Historical, Philosophical, and Political Sciences, at a Zoom meeting.

37. Before this meeting, Plaintiff emailed the attendees, coming out to them as trans.

38. At the Zoom meeting, after thirty minutes with no mention of the coming out letter, Plaintiff heard a colleague laugh, saying that Plaintiff's name was listed as Petra.

39. At this Zoom meeting someone said Plaintiff should hold a large meeting to come out, to which a number of attendees responded by laughing.

40. Moreover, at least one attendee read out loud portions of Plaintiff's coming out letter—which was also met with laughter.

41. The laughter made Plaintiff feel outraged, isolated, betrayed, and humiliated.

42. On September 23, 2020, Plaintiff posted an email to the faculty listserv, as well as to some staff and administrators, announcing Plaintiff's transition from male to female and from the first name Peter to the first name Petra.

43. This letter also explained some personal history leading to the choice.

44. On October 7, 2020, Plaintiff attended a "Faculty Assembly" via Zoom.

45. Upon information and belief, the entire faculty attended the Faculty Assembly.

46. At this Faculty Assembly, Plaintiff arranged their Zoom settings so that Plaintiff's name was displayed as Professor Petra Gardella. In addition, Plaintiff wore a black wig.

47. The Faculty Assembly meeting began with HR Director Seann Kalagher announcing that the standard for Title IX complaints by students against faculty had been lowered from "clear and convincing" evidence to a "preponderance of evidence."

48. Professor Gardella spoke against the change, saying that many faculty had been forced to resign by threats of Title IX actions over the last few years.

49. Professor Nancy Todd, the chair of the faculty who was chairing the meeting, challenged Professor Gardella to give examples and Professor Gardella gave two names in response.

50. Later the same day, Plaintiff attended the "First Year Program Meeting," at which Plaintiff wore a blonde wig.

51. Approximately fifteen faculty members attended the First Year Program Meeting.

52. Following both meetings, also on October 7, 2020, Plaintiff emailed Plaintiff's colleagues in the First Year Program, asking if any of them had preferences or opinions to offer on Plaintiff's choice of wigs.

53. Such personal comments and questions were not uncommon among the faculty email list, as other non-trans faculty often used the faculty email list to share wholly-personal comments and questions.

54. On or about October 9, 2020, then Interim Provost & Vice President of Academic Affairs Christine Dehne emailed Plaintiff.

55. In part, Ms. Dehne wrote:

> [Y]our emails over various faculty lists about your personal fashion choices are inappropriate. These too have been making colleagues uncomfortable. These are topics one might broach with a friend, but unless a colleague has indicated an interest, it is best to assume they are not wanting their work emails to include this sort of solicitation of personal advice.

56. Ms. Dehne's email disciplined Plaintiff for his October 7, 2020 email.

57. Plaintiff was upset at being disciplined because Plaintiff's coming out had, according to the email, made some faculty members "uncomfortable."

58. Plaintiff objected to these discriminatory comments and discipline the following day, writing by email to Ms. Dehne that, among other things, "it makes me very sad to think that people are . . . offended by my trivial, nervous question about wigs."

59. In this email, Plaintiff further noted that the following day—October 11—was National Coming Out Day.

60. On or about October 27, 2020, Plaintiff attended a meeting of a task force focused on diversity, equity, and inclusion, at which Plaintiff identified themselves as trans.

61. Responding to a prompt that each member of the group should discuss things that had made them feel marginalized, Plaintiff described being asked by priests as a youth whether Plaintiff had ever touched themself, and that this was part of their lifelong struggles with sex and gender.

62. At a meeting held on Teams December 11, 2020, HR Director Donald H. Dean verbally charged Plaintiff with "sexual harassment" for speaking too explicitly to Ms Bieleski.

63. On or around November 20, 2020, Student Affairs Counselor Kahlil Koromantee emailed Plaintiff regarding an upcoming meeting to discuss a proposal by Vice President of Student Affairs Cynthia Long Porter to remove the "T" and "Q" from the LGBTQ, replacing it with LGB in Defendant Manhattanville College's diversity programs and policy statements.

64. As such, changing LGBTQ to LGB would literally exclude trans people—as well as queer or questioning individuals—and evidences an animus towards trans people.

65. Ultimately, the T and Q were not removed, in part because Plaintiff contacted a civil rights activist who, upon information and belief, then intervened with Defendant Manhattanville College's decision makers.

66. Still, the attempt evidences an animus towards trans individuals at Defendant Manhattanville College because efforts were made to exclude trans individuals from the aegis of its diversity programs and policy statements.

67. On or about December 11, 2020, Plaintiff, Associate Director of Human Resources Stephanie Carcano, Professor Gillian Hannum, and Human Resources Director Don Dean met to discuss allegations that Plaintiff had violated Defendant Manhattanville College's Electronic Communications Policy, sexual harassment policy, and professional ethics policy.

68. Director Dean said that Plaintiff's October 7, 2020, email about Plaintiff's wigs violated the Electronic Communications Policy because it was a personal communication.

69. Plaintiff protested that this policy was being selectively enforced against Plaintiff, pointing out that other faculty members had similarly sent emails on numerous occasions with photographs of their children and pets—including then Chair of the Faculty, Nancy Todd.

70. In so doing, Plaintiff objected to this discriminatory selective enforcement.

71. The primary difference between Plaintiff's personal email and other faculty members' personal emails was that Plaintiff had just come out as trans.

72. Plaintiff was also told that some anonymous students had complained about sexually charged subject matter discussed in a class taught by Plaintiff.

73. The class is called Sexuality and Religion and Plaintiff had taught it at Manhatanville College approximately every other year since about 1984.

74. The class syllabus for Sexuality and Religion included a trigger warning about this subject matter—something that Defendant Manhattanville College was well aware of in advance because Plaintiff had provided at least one version of the syllabus to their Division Chair, Lisa Rafanelli, in or around 2020.

75. On or about December 13, 2020, Plaintiff sent written objections to these verbal allegations to several individuals, including Ms. Carcano, Mr. Dean, Gillian Hannum, and Seann Kalagher.

76. Plaintiff, among other things, refuted the allegations against Plaintiff, complained that Plaintiff was mocked at the June 19 Division meeting, and explained that the disciplinary actions being taken against Plaintiff were discriminatory based on Plaintiff's sex/gender.

77. On or about January 20, 2021, Benefits Manager/Interim Title IX Coordinator Stephanie Carcano sent Plaintiff a letter, which in part stated that "Human Resources has received multiple complaints from students, peers and colleagues at Manhattanville alleging that you have violated the College's Electronic Communications Policy and policies prohibiting sexual harassment."

78. This letter advised Plaintiff that Defendant Manhattanville College was subjecting Plaintiff to extreme discipline, stating:

> The College has decided . . . that the following sanctions will be imposed:
>
> - **Permanent** suspension from all college listservs (including departmental lists), attendance at Faculty Assembly meetings and departmental/division meetings; and
>
> - **Permanent** removal from any and all appointed College and Faculty committees; and
>
> - **Permanent** ban from participating in College community activities.
>
> These sanctions will remain in place for the remainder of your tenure at Manhattanville . . . .

(Emphasis in original.)

79. Plaintiff only received a written description of the charges against them on or about March 4, 2021, and thus did not have a fair opportunity to challenge this hasty and unlawful discipline.

80. Defendant Manhattanville College disciplined Plaintiff for coming out and for complaining of discrimination.

81. In or around March, 2021, Plaintiff filed an Employment Complaint Form with the New York State Division of Human Rights, alleging that Defendant Manhattanville College had discriminated and retaliated against Plaintiff.

10

82. On or about June 8, 2021, a Faculty Review Committee recommended that all bans on Plaintiff be lifted immediately and that a committee be appointed to investigate the allegations against Plaintiff.

83. The Faculty Review Committee concluded that Plaintiff was disciplined without due process. The Committee recommended that bans on Plaintiff should be lifted immediately, while a panel appointed by President Geisler investigated whether any charges be brought.

84. Defendant Manhattanville College's slapdash methods evidence Defendant Manhattanville College's discriminatory and retaliatory motivations.

85. On or about July 2, 2021, President Geisler rejected the Faculty Review Committee's suggestions and reiterated this position on or about September 9, 2021.

86. On or about October 19, 2021, the New York State Division of Human Rights found probable cause to determine that Defendant unlawfully discriminated against Plaintiff.

88. On or about May 4, 2022, Plaintiff appealed in person to Professor Lisa Rafanelli, who was then Chair of Plaintiff's academic Division and incoming Chair of the Faculty as of July 1, to intervene with the president and provost to lift the bans in exchange for dropping the DHR charges.

89. At a meeting on Teams on or about June 15, 2022, HR Director Richard Sheehy said that Professor Rafanelli had complained about the May 4 meeting but agreed to bring Plaintiff's request to discuss lifting the bans to his superiors and schedule another meeting quickly. However, Sheehy did not do so.

90. The next word Plaintiff had from Director Sheehy was a letter sent to many faculty on June 17, offering anyone who taught in a program with fewer than 10 majors a year of salary in exchange for resigning effective in the fall, with a deadline of July 15. To receive that

year of salary, faculty would also have to sign an agreement to release the College from all legal actions and a Non Disparagement clause agreeing to say nothing "that could be construed" as disparaging to the College. Not wishing to resign or to sign such a document, Plaintiff hoped for the specific reply that Director Sheehy had promised. On the deadline of July 15, still having heard nothing from the June 15 meeting, because of the continuing harassment of the bans, Plaintiff resigned Plaintiff's tenured faculty position, charging constructive dismissal, in a letter of July 15, effective December 31. On July 28, Director Sheehy sent Plaintiff a "no contact" order, barring any communication with Professor Rafanelli. Director Sheehy himself left the College on July 31, after only three months in his position.

91.     Plaintiff continued to teach through the fall semester of 2022, without being allowed to contact Professor Rafanelli, the Chair of the Faculty and Plaintiff's Division.92.

92.     Plaintiff's working conditions were so intolerable that any reasonable person in Plaintiff's position would have felt compelled to resign.  For example, Plaintiff was still barred from faculty meetings and community events.

87.     Attending faculty meetings was an essential part of Plaintiff's position as a professor.

88.     Plaintiff does not know of any other faculty members being barred from attending faculty meetings.

89.     Attending community events was also an essential part of Plaintiff's position as a professor.

90.     Plaintiff does not know of any other faculty members being barred from community events.

12

91. Hence, banning Plaintiff from faculty meetings and community events prevented Plaintiff from performing essential aspects of Plaintiff's job—and the very nature of this change to the terms and conditions of Plaintiff's employment was an extreme outlier, evidencing the discriminatory and retaliatory animus against Plaintiff.

92. Moreover, by barring Plaintiff from faculty meetings and community events and thus shunning Plaintiff for daring to come out as well as for objecting to discrimination, Defendant Manhattanville College essentially thrust Plaintiff back into the closet, where Defendant Manhattanville College would not need to deal with a troublesome trans individual like Plaintiff.

93. Defendant Manhattanville College also negated Plaintiff's right to express their sex and gender identity while physically present.

94. Further, the disciplinary process and poisoned workplace atmosphere cultivated by many of Plaintiff's colleagues created an intolerably hostile work environment.

95. All of this was an overwhelming betrayal of a member of the Manhattanville College community who had been there since approximately 1983.

96. As such, Defendant Manhattanville College terminated Plaintiff.

97. As such, Defendant Manhattanville College constructively terminated Plaintiff.

98. Plaintiff explained that Defendant Manhattanville College constructively discharged Plaintiff in Plaintiff's letter of resignation.

99. Defendant Manhattanville College knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

100. Defendant Manhattanville College retaliated against Plaintiff because Plaintiff objected to this discriminatory, retaliatory, and unlawful conduct.

101. Defendant Manhattanville College created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

102. The above are just some of the ways Defendant Manhattanville College regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

103. Defendant Manhattanville College treated Plaintiff this way solely due to Plaintiff's sex/gender and/or gender identity and because Plaintiff objected to the discriminatory treatment.

104. Defendant Manhattanville College acted intentionally and intended to harm Plaintiff.

105. Plaintiff felt betrayed because they expected Defendant Manhattanville College to protect them from discrimination.

106. Defendant Manhattanville College unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

107. Plaintiff's performance was more than satisfactory while working for Defendant.

108. Plaintiff received the Manhattanville Alumni Association's Distinguished Faculty Award, an award signed by President Marcia Savage, in Spring 1989.

109. Plaintiff served as Chair of the Faculty from 2004 through 2007, elected by faculty colleague in each of those three years, and as Chair of the Faculty Compensation Committee from 1998 until 2016, except for the years as Faculty Chair.

110. Plaintiff was qualified for Plaintiff's position.

111. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

112. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

113. Defendant Manhattanville College acted maliciously, willfully, outrageously, and with full knowledge of the law.

114. As such, Plaintiff demands punitive damages.

### FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII

115. Plaintiff restates the foregoing allegations.

116. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

117. Defendant Manhattanville College violated the section(s) cited as set forth.

### SECOND CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII

118. Plaintiff restates the foregoing allegations.

119. By the foregoing actions, Defendant has subjected Plaintiff to a hostile work environment because of his sex/gender in violation of Title VII of the Civil Rights Act of 1964.

### THIRD CAUSE OF ACTION FOR RETALIATION
### UNDER TITLE VII

120. Plaintiff restates the foregoing allegations.

121. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

122. Defendant Manhattanville College violated the section(s) cited as set forth.

### FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER N.Y. HUMAN RIGHTS LAW

123. Plaintiff restates the foregoing allegations.

124. By so acting, Defendants violated New York's prohibition on workplace discrimination based upon gender identity.

125. Plaintiff has been damaged by Defendant's violation of the New York Human Rights Law.

### FIFTH CAUSE OF ACTION FOR HOSTILE WORK ENVIRONMENT
### UNDER N.Y. HUMAN RIGHTS LAW

126. Plaintiff restates the foregoing allegations.

127. By so acting, Defendants violated New York's prohibition on creating and maintaining a hostile work environment based upon Plaintiff's gender identity.

128. Plaintiff has been damaged by Defendant's violation of the New York Human Rights Law.

## SIXTH CAUSE OF ACTION FOR RETALIATION
## UNDER TITLE VII

129.   Plaintiff restates the foregoing allegations.

130.   By the foregoing acts, Defendant retaliated against Plaintiff in violation of the New York Human Rights law.

131.   Plaintiff has been damaged by such retaliatory treatment.

## JURY DEMAND

132.   Plaintiff requests a jury trial on all issues to be tried.

WHEREFORE, Plaintiff requests a judgment against Defendant Manhattanville College:

A.   Declaring that Defendant Manhattanville College engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., and the New York State Human Rights Law, N.Y. Executive Law Executive Law § 290 et seq., in that Defendant Manhattanville College discriminated against Plaintiff based on Plaintiff's sex/gender and/or gender identity, imposed a hostile work environment based on Plaintiff's sex/gender and/or gender identity, and retaliated against Plaintiff for engaging in protected activity and wrongfully terminated Plaintiff;

B.   Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant Manhattanville College's unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C.   Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant Manhattanville College's unlawful employment practices and conduct.

Dated: Rhinebeck, New York
April 9, 2024

_____
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
42 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff Peter (Petra) Gardella